IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEMARCUS ALI SEARS,

                     Petitioner,

     v.                                **1:10-cv-1983-WSD**

WARDEN BRUCE CHATMAN,

                     Respondent.

## OPINION AND ORDER

This matter is before the Court on Respondent Warden Bruce Chatman's ("Respondent") Brief in Support of Procedural Defenses to Petitioner's Procedurally Defaulted, Unexhausted, and Non-Cognizable Claims [32] (the "Brief").

## I.    BACKGROUND

In 1993, Petitioner Demarcus Ali Sears ("Petitioner") was convicted of kidnapping with bodily injury and armed robbery in connection with the death of Ms. Gloria Wilbur. Sears v. Humphrey, 751 S.E.2d 365, 367-68 (Ga. 2013). The trial court sentenced Petitioner (i) to death for the kidnapping with bodily injury in accordance with the jury's recommendation, and (ii) to a life sentence for the

armed robbery.  Id. at 368.  The Georgia Supreme Court affirmed Petitioner's convictions and sentence.[1]  Id.

In 2000, Petitioner filed his petition for state habeas corpus relief, which was denied on January 9, 2008.[2]  Id.  Petitioner then filed an Application for Certificate of Probable Cause to Appeal the ruling of the state habeas court, which the Georgia Supreme Court denied on November 2, 2009.  ([8] ¶ 1).  On January 27, 2010, Petitioner filed his petition for certiorari with the United States Supreme Court. (Id.).

On June 25, 2010, while Petitioner's certiorari petition was pending, Petitioner filed his Petition for Writ of Habeas Corpus [1] in this Court.  Four days later, on June 29, 2010, the Supreme Court granted the petition for certiorari, vacated the state habeas court ruling and remanded the case to the state habeas court for further proceedings in accordance with its opinion.  Sears v. Upton, 561 U.S. 945, 956 (2010).  In view of the Supreme Court's order, and with the agreement of the parties, the Court stayed further proceedings in this case to allow

---

[1]      In support of his appeal to the Georgia Supreme Court, Petitioner filed his "Brief of Appellate and Enumeration of Errors on Direct Appeal" [16.22-16.24] (the "Appellate Brief").

[2]      In support of his state habeas proceeding, Petitioner filed his "Amended Petition for Writ of Habeas Corpus" [18.21-18.22] (the "State Habeas Petition"), and his "Post-Hearing Brief" [21.8-21.9] ("the "Post-Hearing Brief").  The state habeas court's January 9, 2008, order denying Petitioner's State Habeas Petition is docketed at [21.12] (the "State Habeas Court Order").

Petitioner to fully exhaust his state court remedies.  (August 20, 2010, Order [9] at 1).

In the state court habeas proceedings following remand, the Georgia courts again denied Petitioner state habeas corpus relief,[3] and Petitioner's federal habeas claims are now before the Court for review.[4]  See Humphrey, 751 S.E.2d at 365.

On August 4, 2014, Petitioner filed his Amended Petition for Writ of Habeas Corpus [28] (the "Amended Petition"), in which he asserts fifteen (15) claims, many with subparts.  Petitioner's habeas relief claims include:

- Claim I - ineffective assistance of counsel at trial and on appeal;

- Claim V - prosecutorial misconduct denied Petitioner's Due Process rights and right to a fair trial;

- Claim VII - the trial court's instructions to the jury violated Petitioner's rights to Due Process, a fair trial and a reliable determination of punishment;

---

[3]     In support of his state habeas proceeding on remand, Petitioner filed his "Brief in Support of Writ of Habeas Corpus on Remand" [21.25-21.27] ("Post-Remand Brief") and his "Reply Brief in Support of Writ of Habeas Corpus on Remand" [21.32] ("Post-Remand Reply").  The state habeas court's August 16, 2011, order denying Petitioner's State Habeas Petition on remand is docketed at [21.36] ("Order on Remand").

[4]     On June 24, 2014, the Court entered its Scheduling Order [26], allowing Petitioner until August 4, 2014, to file any amendments to his Petition. (Scheduling Order ¶ 1).  The Court ordered Respondent to file his answer no later than thirty (30) days after Petitioner filed an amended petition, and to file his Assertion of Procedural Defenses no later than thirty (30) days after Respondent filed his answer.  (Id. ¶ 2).

3

- Claim IX - the trial court wrongfully excused, for cause, jurors whose views on the death penalty did not justify removal;

- Claim XI - Petitioner's sentence was disproportionate and excessive in violation of the Eighth Amendment;

- Claim XIII[5] - the 24-year delay between Petitioner's sentencing and the imposition of his death sentence violates the Eighth Amendment; and

- Claim XV - lethal injection violates Petitioner's Eighth Amendment rights.

(See generally Am. Pet.).[6]

On October 3, 2014, Respondent filed his Brief.  Respondent argues that

Petitioner has procedurally defaulted Claims I, V, VII, IX, and XI, and that Claims

XI, XIII, and XV are not cognizable on federal habeas review.  (Id. at 15-34).

---

[5]     This claim, the twelfth in the Amended Petition, is mislabeled as Claim XIII. There is no Claim XII.  The Court refers to Petitioner's claims using the claim number identified in the Amended Petition (e.g., Claim XIII), which is consistent with the parties' submissions.

[6]     Petitioner asserts the following additional claims that are not at issue in Respondent's Brief: the rule of Sabel v. State is unconstitutional and application of it denied Petitioner his rights to Equal Protection, Due Process, and effective assistance of counsel (Claim II); juror misconduct resulting in violation of Petitioner's Due Process right and right to a fair trial (Claim III);  trial court errors resulting in the denial of Petitioner's constitutional rights (Claim IV); failure of the trial judge to recuse himself despite personal relationship with the victim denied Petitioner's right to Due Process and a fair trial (Claim VI); the District Attorney unconstitutionally excused jurors on the basis of race (Claim VIII); the trial court failed to remove jurors for cause or bias (Claim X); the use of aggravating circumstances without notice violated Petitioner's right to Due Process (Claim XIV); and the procedural and substantive errors at trial were not, in the aggregate, harmless and they deprived Petitioner of his right to a fair trial  (Claim XVI).

## II.    DISCUSSION

Respondent argues that the state court found all, or at least some, of Claims V, IX, and XI to be procedurally defaulted, and that the Court also should find these claims procedurally defaulted.

Respondent next argues that the state court found certain of the subclaims in Claim I to have been abandoned, that the Court should consider this to be a state court finding of procedural default, and deny the claims.

Respondent also argues that Petitioner failed to exhaust Claims I, V, VII, and XI and that these claims are procedurally defaulted.

Finally, Respondent argues that all, or a subset, of Claims XI, XIII, and XV are not cognizable federal habeas claims, and should be dismissed. The Court considers each of these arguments in turn.

### A.    Procedural Default

A claim presented in a federal habeas corpus petition generally is barred if the claim is procedurally defaulted. Procedural default can arise in two ways:

> First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, Sykes[7] requires the federal court to respect the state court's decision. Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural

---

[7]    Wainwright v. Sykes, 433 U.S. 72 (1977).

default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

1.    State Law Procedural Default

"[A] state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001) (citing Coleman v. Thompson, 501 U.S. 722, 729-30 (1991)).  The Eleventh Circuit has "established a three-part test . . . to determine when a state court's procedural ruling constitutes an independent and adequate state rule of decision."  Id.  "First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim."  Id.  "Second, the state court's decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law."  Ward v. Hall, 592 F.3d 1144, 1156-57 (11th Cir. 2010) (citing Judd, 250 F.3d at 1313).  "Third, the state procedural rule must be adequate, i.e., firmly established and regularly followed and not applied 'in an arbitrary or unprecedented fashion.'"  Id. at 1157 (quoting Judd, 250 F.3d at 1313).  When a state court is silent on its reasoning why it has

rejected a particular claim, this Court may presume that the rejection rested upon a procedural default only where "the last reasoned opinion on the claim explicitly imposes a procedural default" based on state law grounds.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  "The Sykes' procedural default rule does not preclude federal habeas review of a petitioner's constitutional claims if the state court declines to apply a procedural bar and adjudicates the federal claims on the merits."  Hardin v. Black, 845 F.2d 953, 958 (11th Cir. 1988).

### 2.    Failure to Exhaust

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  A state habeas corpus petitioner who fails to exhaust his federal claims properly in state court is "procedurally barred from pursuing the same claim in federal court . . . ."  Bailey, 172 F.3d at 1302.

"To satisfy the exhaustion requirement, petitioners [must] present their claims to the state courts such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation."  Hunt v. Comm'r, Ala. Dep't of Corr., 666 F.3d 708, 730 (11th Cir. 2012) (internal quotations omitted).  "[A] petitioner cannot 'scatter some makeshift needles in the haystack of

the state court record.  The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1271 (11th Cir. 2015) (quoting Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1345 (11th Cir. 2004)). It is not sufficient that the federal habeas petitioner went through the state court habeas process or that all the facts necessary to support the claim were before the state courts or that a petitioner asserted a somewhat similar state-law habeas claim. Kelley, 377 F.3d at 1343-44 (internal citations and quotations omitted).  "The petitioner must present his claims to the state courts such that they are permitted the opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim."  Id. at 1344 (internal quotations omitted).

If a defendant raises a claim in state court for the first time during his state habeas proceeding, the state court petition must "clearly set forth the respects in which the petitioner's rights were violated . . . ."  O.C.G.A. § 9-14-44.  A "brief may be submitted in support of the petition setting forth any applicable argument" on the claims asserted in the petition.  Id.  Raising a claim for the first time in a brief in support of a habeas petition is not sufficient to properly present it to the habeas court.  See Murrell v. Young, 674 S.E.2d 890, 892 n.2 (2009); see also

O.C.G.A. § 9-14-51 ("All grounds for relief claimed by a [habeas] petitioner . . . shall be raised . . . in his original or amended petition.").  However, where a state habeas court considers the claim on the merits, despite it being improperly raised, the claim is exhausted and the federal court must address the claim on the merits.  See Hardin, 845 F.2d at 958 (11th Cir. 1988).

> 3.    Cause and Prejudice

If a federal habeas petitioner has procedurally defaulted on a claim on an independent and adequate state procedural rule or failure to exhaust grounds, he "can escape the procedural default doctrine either through showing cause for the default and prejudice, or establishing a fundamental miscarriage of justice." Bailey, 172 F.3d at 1306 (internal quotations and citation omitted).  "Cause exists if there was 'some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule.'"  Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  This can include "evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel."  Id.

"In addition to cause, the petitioner must also show prejudice: that 'there is at least a reasonable probability that the result of the proceeding would have been different' had the constitutional violation not occurred." Id. (quoting Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003)).  Absent cause and prejudice, a procedural default of a claim may be "excused if enforcing the default would result in a fundamental miscarriage of justice." Id.  "This exception applies if the petitioner can show that, in light of new evidence, it is probable that no reasonable juror would have convicted him." Id.  "By making this showing of actual innocence, the petitioner may overcome the procedural default and obtain federal review of the constitutional claim." Id.

Whether a claim has been procedurally defaulted under either ground "is a mixed question of law and fact . . . ." Bailey, 172 F.3d at 1302; Hansbrough v. Latta, 11 F.3d 143, 145 (11th Cir. 1994).

B.    Analysis

1.    Claims Found By The State Habeas Court To Be Procedurally Defaulted

The state habeas court found several of Petitioner's claims were procedurally defaulted, including:

Count V - prosecutorial misconduct because the prosecutor improperly:

(a) suppressed material impeachment information regarding Phillip Williams in violation of <u>Brady v. Maryland</u>;

(b) presented, in violation of <u>Giglio v. United States</u>, Williams' false testimony regarding circumstances of Petitioner's alleged crime;

(c) argued during his closing argument on sentencing that the jurors should punish Petitioner for rape;

(d) injected his own view of the evidence and vouched for the strength of the State's case in the guilt-innocence and sentencing phase closing arguments;

(e) denigrated the jurors' right to exercise mercy in the sentencing phase closing argument;

Claim IX - the trial court erred by improperly intervening in *voir dire* by disqualifying five prospective jurors because of their views on the death penalty; and

Claim XI - Petitioner's Eighth Amendment rights were violated because Petitioner's cognitive and emotional impairments made him the equivalent of a juvenile offender, and the imposition of the death penalty was disproportionately severe when other juvenile offender sentences are considered.

(State Habeas Court Order 8-10, 12, 17-18).

Petitioner argues that the state habeas court incorrectly found that he procedurally defaulted on his claims in Claim V based on the prosecutor's closing arguments, and in Claim IX.  Although Petitioner concedes that he procedurally

defaulted on his claims in Claim V based on violation of <u>Brady</u> and <u>Giglio</u>,

Petitioner argues that cause and prejudice exist to excuse the procedural default.[8]

a)     <u>State Habeas Court Finding of Procedural Default</u>

(1)     <u>Claim V - Prosecutorial Misconduct Based on Sentencing Phase Closing Argument that the Jurors Should Punish Petitioner for Rape</u>

Petitioner argues that he did not procedurally default on this claim because he asserted, in his Appellate Brief on direct appeal, that the prosecution "exhorted the jury to convict [Petitioner] in order to punish him for rape, a crime for which he was not on trial." (Pet.'s Br. in Resp. [35] (the "Response") at 25). Respondent argues that Petitioner's "rape argument" claim on direct appeal was based only on the prosecutor's <u>guilt-innocence phase</u> closing argument, and Petitioner did not assert a claim based on the prosecutor's <u>sentencing phase</u> closing argument. (Reply at 24-25). As a result, the state habeas court finding that this claim was procedurally defaulted was proper. (<u>Id.</u>). The Court agrees.

Petitioner, in his State Habeas Petition, asserted a "rape argument" claim only in relation to the <u>guilt-innocence phase</u> closing argument at trial. (State Habeas Petition at 72, 76). The state habeas court noted that Petitioner's

---

[8]     Petitioner concedes he procedurally defaulted on his claim that the prosecutor's closing argument at sentencing denigrated the jurors' right to exercise mercy, and he does not argue that cause and prejudice exist to excuse the procedural default. (Resp. at 25). This claim is dismissed.

guilt-innocence phase rape argument claim was addressed on direct appeal by the

Georgia Supreme Court, and denied.  (State Habeas Court Order at 12).[9]  The state

habeas court went on to hold that, to the extent Petitioner's "rape argument" claim

was not addressed by the Georgia Supreme Court on direct appeal, it was

procedurally defaulted.  (Id.).  Because Petitioner's sentencing phase rape

argument was not addressed by the Georgia Supreme Court on direct appeal, the

state habeas court properly found the claim was procedurally defaulted, and this

claim is procedurally defaulted in this federal habeas action, and dismissed.

See Bailey, 172 F.3d at 1302.[10]

> (2)    Claim V - Prosecutorial Misconduct Because
> Prosecutor Improperly Injected His Own View of the
> Evidence and Vouched for the Strength of the State's
> Case in Guilt-Innocence and Sentencing Phase Closing
> Arguments

Petitioner argued, in his Appellate Brief on direct appeal, that the

"prosecutor injected personal opinion into his closing argument when he stated his

belief that the only purpose of brass knuckles is to attack and cause dangerous

---

[9]    Petitioner's federal habeas claim regarding the prosecutor's rape argument
addresses closing arguments at both phases of trial.  Respondent does not argue,
and the Court does not find, that Petitioner procedurally defaulted on this claim as
it relates to the prosecutor's closing argument during the guilt-innocence phase.

[10]    While not argued by Respondent, Petitioner failed to exhaust his sentencing
phase rape argument by failing to raise this claim on direct appeal and in his state
habeas proceeding.  (Appellate Br. at 178-79; State Habeas Petition at 72, 76,
80-83); See Bailey, 172 F.3d at 1302.

injury."  (Appellate Br. at 197-98)  The expression of this personal opinion,

Petitioner claims, was improper.  A review of the state appeal record shows that,

other than this discussion about brass knuckles, Petitioner did not claim that the

prosecutor injected his view on any other matter.

The state habeas court found that Petitioner's "brass knuckles argument"

was denied on the merits on direct appeal by the state appellate court.

(State Habeas Court Order at 9).  The state habeas court held that <u>any other claim</u>

Petitioner asserts based on the prosecutor expressing his personal opinion about the

merits of the evidence was not presented to or addressed by the Georgia Supreme

Court, and thus is procedurally defaulted.  (<u>Id.</u>).

Petitioner does not state in the Amended Petition what specific comments

and personal viewpoints he contends were improperly argued to the jury at trial.

His record references suggest that he may seek to present, to this Court, more than

just the prosecutor's brass knuckles comment.  If Petitioner intends to assert claims

based on more than just the brass knuckles comment, the state habeas court

properly found the claims unrelated to the brass knuckles comment are

procedurally defaulted because they were not presented to, or considered by, the

Georgia Supreme Court on direct appeal.  (<u>Id.</u>); <u>see also</u> <u>Bailey</u>, 172 F.3d at 1302.

These state law procedurally defaulted claims are procedurally defaulted in this federal habeas action, and dismissed.

> (3)   Claim IX – The Trial Court Improperly Intervened in Voir Dire and Agreed to Disqualify Five Prospective Jurors Based on their Views on the Death Penalty

In <u>Witherspoon v. Illinois</u>, the Supreme Court held that jurors cannot be excluded "simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." <u>Witherspoon v. Illinois</u>, 391 U.S. 510, 522 (1968); <u>see also</u> <u>Randolph v. McNeil</u>, 590 F.3d 1273, 1276 (11th Cir. 2009).  The state habeas court characterized Petitioner's <u>Witherspoon</u> claim in his State Habeas Petition as follows: "[Petitioner claims] the trial court violated Petitioner's constitutional rights by excusing for cause unspecified jurors whose views on the death penalty were not extreme enough to warrant exclusion under <u>Witherspoon</u> . . . ."  (State Habeas Court Order at 8).

Petitioner's "death-qualification" claim raised on direct appeal was not a <u>Witherspoon</u>-based claim.  Petitioner, on direct appeal, asserted only that Georgia did not have jurisdiction to prosecute his case as a death penalty case and thus it was improper to question jurors based on their views on the death penalty, because questioning jurors about their death penalty views resulted in a jury more likely to

convict Petitioner of the crimes for which he was indicted.  (Appellate Br. at

137-40).  Petitioner argued only that five jurors were questioned about "their

feelings about the death penalty and excused . . . for cause."  (Id. at 137).

Petitioner did not assert that the jurors' for-cause excusal was improper under

Witherspoon.[11]

The Georgia Supreme Court addressed only Petitioner's claim that

qualifying jurors on the death penalty was improper, concluding that, because "the

state had authority to seek the death penalty, it was proper to qualify the jurors

concerning the death penalty."  Sears v. State, 493 S.E.2d 180, 185 (Ga. 1997).

The Georgia Supreme Court did not address a claim that excusal of these jurors

violated Witherspoon.  The Witherspoon-based claim raised in this federal habeas

case, and in Petitioner's State Habeas Petition, was not considered on direct appeal

because Petitioner did not present it to the Georgia Supreme Court.

In discussing Petitioner's "death qualification" claim, the state habeas court

stated:

> To the extent this claim . . . was not addressed by the Georgia
> Supreme Court on direct appeal, this claim is procedurally defaulted
> and may not be addressed on its merits in this proceeding absent a

---

[11]     On direct appeal, Petitioner cited Witherspoon only to support that
death-qualification of juries is permitted in capital cases.  (Id. at 137-38).  He did
not assert that the jurors in his case were excluded because of general objections to
the death penalty or "conscientious or religious scruples against its infliction."

> showing of cause and actual prejudice or of a miscarriage of justice to
> overcome the procedural default.

(State Habeas Court Order at 8).  Because Petitioner did not raise his

Witherspoon-based claim on direct appeal, the state habeas court properly found

the claim was procedurally defaulted, and this claim is procedurally defaulted in

this federal habeas action.  See Bailey, 172 F.3d at 1302.  Petitioner also does not

argue that cause and prejudice exist to excuse this default.  For these reasons, the

Court concludes that the state habeas court properly concluded that Petitioner's

Witherspoon claim is procedurally defaulted and is procedurally defaulted in this

federal habeas action, and dismissed.  See id. at 1302-03.[12]

> b)   Cause and Prejudice to Excuse Procedural Default

Petitioner concedes that he procedurally defaulted on three claims:

> Claim V - prosecutorial misconduct because the prosecutor
> improperly suppressed material impeachment information about
> Williams, in violation of Brady v. Maryland;

---

[12]   The state habeas court, in discussing the Witherspoon claim raised in
Petitioner's State Habeas Petition, stated that this claim "was addressed and
decided adversely to Petitioner on direct appeal."  (State Habeas Court Order at 8)
(citing Sears, 268 Ga. at 763(7)).  The state habeas court appears to have conflated,
to an extent, Petitioner's Witherspoon claim raised in his State Habeas Petition
with his claim on direct appeal that death qualification of the jury was improper
because his case should not have been a capital case.  Because Petitioner did not
assert his Witherspoon claim on direct appeal, the state habeas court's finding that
any claim not addressed on direct appeal, applies.

> Claim V - prosecutorial misconduct because the prosecutor
> improperly presented Williams' false testimony regarding the crime's
> circumstances, in violation of <u>Giglio v. United States</u>; and
>
> Claim XI - Petitioner's Eighth Amendment rights were violated
> because his cognitive and emotional impairments make him the legal
> equivalent of a juvenile offender, rendering the death penalty
> disproportionately severe.[13]

(Resp. 15-24, 27).  Petitioner argues, however, there is cause for the procedural

default of these claims, and that he will suffer prejudice if the Court does not

excuse it.

"Cause exists if there was 'some objective factor external to the defense

[that] impeded counsel's efforts to comply with the State's procedural rule.'"

<u>Mize</u>, 532 F.3d at 1190 (quoting <u>Murray</u>, 477 U.S. at 488).  "[A] showing that the

factual or legal basis for a claim was not reasonably available to counsel" can

constitute "cause."  <u>Coleman</u>, 501 U.S. at 753 (quoting <u>Murray</u>, 477 U.S. at 488).

---

[13]    Petitioner concedes he first asserted this claim in his state habeas petition but
argues that his claim was timely under Georgia law because the factual and legal
basis for it was not available during his direct appeal and, thus, he did not
procedurally default on this claim.  (Resp. at 27) (citing <u>Turpin v. Christensen</u>,
497 S.E.2d 216, 221 (Ga. 1998)).  In <u>Turpin</u>, the factual and legal basis for an
underlying habeas claim was not available to counsel at an earlier stage, and the
question for the court was whether this constituted "cause" that might justify
excusing the default.  <u>Turpin</u>, 497 S.E.2d at 221.  <u>Turpin</u> does not state that the
inability to raise the claim at an earlier proceeding means that no procedural
default occurred.  By conceding that that he did not raise this claim until his state
habeas proceeding, Petitioner has acknowledging his procedural default of this
claim.

"In addition to cause, the petitioner must also show prejudice: that 'there is at least a reasonable probability that the result of the proceeding would have been different' had the constitutional violation not occurred."  Mize, 532 F.3d at 1190 (quoting Henderson, 353 F.3d at 892).  The Eleventh Circuit has held that a "reasonable probability is a probability sufficient to undermine confidence in the outcome."  Lynd v. Terry, 470 F.3d 1308, 1315-16 (11th Cir. 2006).  If cause and prejudice are not present, a procedural default of a claim also may be "excused if enforcing the default would result in a fundamental miscarriage of justice."  Id.

> (1)   Claim V - Prosecutorial Misconduct Because
>        Prosecutor Suppressed Information Regarding
>        Williams in Violation of Brady v. Maryland

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  This "duty to disclose such evidence is applicable even though there has been no request by the accused," and includes "impeachment evidence as well as exculpatory evidence."  Strickler v. Greene, 527 U.S. 263, 280 (1999).  "Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

19

Id. (internal quotations omitted).  "In order to comply with Brady, therefore, the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police."  Id. at 281 (citing Kyles v. Whitley, 514 U.S. 419. 437 (1995)).  "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Id. at 281-82.

Petitioner claims Williams was the prosecutor's primary witness against him.  (Am. Pet. at 86).  He also claims the prosecution knew, but did not disclose, that Williams had been convicted of battery for a premeditated assault he committed at the Cobb County Adult Detention Center.  (Id.).  Petitioner argues that despite repeated requests for Williams' criminal history, the prosecution failed to disclose Williams' battery conviction and did not provide Williams' criminal records.  (Id.).  Petitioner argues that the prosecution's case was largely based on Williams' testimony that Petitioner instigated the kidnapping of which he was convicted, and the evidence regarding Williams' battery conviction was material and was required, under Brady, to be disclosed.  (Id. at 87).

20

In his State Habeas Petition, Petitioner asserted that the prosecution provided his counsel with certain records about Williams, but these records did not contain meaningful evidence concerning Williams' veracity, prior bad acts, or his propensity to commit battery.  (State Habeas Petition at 13-14).  The state habeas court found this claim to be procedurally defaulted because it was not raised on direct appeal.  (State Habeas Court Order at 17).  Petitioner concedes that this argument was not raised on direct appeal, but argues that cause and prejudice exist to excuse the state habeas court's procedural default finding.  (Am. Pet. at 93; Resp. at 15-22).

In this case, the prosecution took an "open file" approach to discovery by providing Petitioner access to the prosecution's case file.  It is not disputed that documents concerning Williams' 1991 guilty plea and conviction for the premeditated assault were not in the file when Petitioner's defense counsel reviewed it in 1993.  (Am. Pet. at 89).  It is also undisputed that the office that prosecuted Petitioner also prosecuted Williams on his battery charge and that the office had Williams' criminal record from the 1991 prosecution.  Neither the prosecutor, nor his office, which possessed this information about Williams' battery conviction, produced it to Petitioner's trial counsel.

On similar facts, the Supreme Court, in <u>Strickler</u>, found that a petitioner

established cause to excuse the default of a <u>Brady</u> claim where:

> (a) the prosecution withheld exculpatory evidence; (b) petitioner
> reasonably relied on the prosecution's open file policy as fulfilling the
> prosecution's duty to disclose such evidence; and (c) the
> Commonwealth confirmed petitioner's reliance on the open file policy
> by asserting during state habeas proceedings that petitioner had
> already received everything known to the government.

<u>Strickler</u>, 527 U.S. at 289 (internal quotations omitted).  Like <u>Strickler</u>, the

prosecutor's office had an open file policy but also possessed evidence regarding

Williams' battery conviction which was not produced.  Petitioner relied on the

prosecution's open file policy to fulfill the prosecutor's <u>Brady</u> obligations,

including to produce all adverse information about Williams.  (Tr. of

Dec. 13, 1991, proceeding before Superior Court Judge G. Grant Brantley [14.20]

at 9-10).  The prosecution knew Petitioner relied on its open file policy.  (See <u>id.</u>

(granting Petitioner's motion to disclose exculpatory evidence, and noting that the

prosecution stated it was complying on its own and would provide its entire file,

and that this obligation would be continuing in nature)).  The Supreme Court, in

another open file case, stated that its "decisions lend no support to the notion that

defendants must scavenge for hints of undisclosed <u>Brady</u> material when the

prosecution represents that all such material has been disclosed."  <u>Banks v. Dretke</u>,

540 U.S. 668, 695 (2004).  The Court finds that Petitioner established cause for the procedural default of his <u>Brady</u> claim.

The question is whether Petitioner can show that "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."  <u>See</u> <u>Mize</u>, 532 F.3d at 1190 (internal quotations omitted).  That is, whether there "is a probability sufficient to undermine confidence in the outcome."  <u>Lynd</u>, 470 F.3d at 1315-16.  Williams' criminal records from his 1991 conviction, if they had been provided to Petitioner, may have allowed Petitioner to undermine Williams' testimony that Petitioner initiated the kidnapping.  Williams' testimony was central to the prosecutor's case that the kidnapping was initiated by Petitioner.  That Williams conceived of and orchestrated the attacks on the victim may well have impacted the jury's view whether Williams initiated the kidnapping and, if so, whether the death penalty was the appropriate sentence for Petitioner.  It may also have discredited Major Jim Burns' testimony that Petitioner, rather than Williams, was the worst inmate at the Cobb County Adult Detention Center, where Williams committed a premeditated assault at the detention facility.  (<u>See</u> Section II(B)(3)(f)(3)).  The fact is that Williams' criminal record had a probability sufficient to undermine

confidence in the outcome of the guilt-innocence, sentencing, or both, phases of Petitioner's trial.

Petitioner has established both cause and prejudice to excuse his procedural default of his <u>Brady</u> claim based on the failure to disclose evidence regarding Williams' battery conviction.

> (2)   <u>Claim V - Prosecutorial Misconduct Because Prosecutor Violated Giglio v. United States When the Prosecutor Presented Williams' False Testimony</u>

Petitioner argues that Williams falsely testified about who initially assaulted the victim, and who initiated the kidnapping and that "cause" exists because the prosecution concealed that Williams initiated the kidnapping and assault on the victim.  (Resp. at 23-24).  Petitioner has not presented any evidence, other than his unsupported argument, that Williams' testimony was false, or, even if it was, that the prosecutor knew it was false but allowed it to be presented to the jury.  <u>See Giglio</u>, 405 U.S. at 153.  Petitioner fails to show that the prosecutor engaged in <u>Giglio</u>-based misconduct and thus cannot establish cause to excuse the procedural default of this claim.  <u>See Coleman</u>, 501 U.S. at 753.  This claim is dismissed.  <u>See Bailey</u>, 172 F.3d at 1306.

    (3)    <u>Claim XI – Eighth Amendment Violation Because
Petitioner's Cognitive and Emotional Impairments
Render Him the Legal Equivalent of a Juvenile
Offender</u>

The state habeas court considered Petitioner's state habeas claim that his
disabilities and mental illnesses make him the functional "equivalent of a person
who is mentally retarded." (<u>Id.</u>). It held that the claim was not raised by Petitioner
at trial or on direct appeal and, thus, was procedurally defaulted. (State Habeas
Court Order at 17-18).

Petitioner relies on cases decided by the Supreme Court after his direct
appeal became final to support that the factual and legal bases for his claim arose
after his direct appeal became final. For the purpose of the cause analysis required
here, the Court assumes the post-direct appeal authority might satisfy the cause
prong. The Court considers the prejudice requirement.

Petitioner's Eighth Amendment violation claim is based on the Supreme
Court's holdings in <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002) and <u>Roper
v. Simmons</u>, 543 U.S. 551 (2005). In <u>Atkins</u>, the Supreme Court considered
whether the execution of a "mentally retarded[14] criminal" violates the Eighth
Amendment, an issue the Supreme Court first considered in <u>Penry v. Lynaugh</u>,
492 U.S. 302 (1989). In <u>Penry</u>, the Supreme Court concluded that while "mental

---

14    This is the characterization used by the courts in this genre of cases.

retardation is a factor that may well lessen a defendant's culpability for a capital offense[, we] cannot conclude today that the Eighth Amendment precludes the execution of any mentally retarded person of Penry's ability convicted of a capital offense simply by virtue of his or her mental retardation alone." Penry, 492 U.S. at 340. The Supreme Court noted: "[w]hile a national consensus against execution of the mentally retarded may someday emerge reflecting the 'evolving standards of decency that mark the progress of a maturing society,' there is insufficient evidence of such a consensus today. Id.

In Atkins, the Supreme Court again considered this Eighth Amendment issue. The Supreme Court found that the Eighth Amendment prohibits excessive sanctions, and that the excessive sanctions standard "draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society." Atkins, 536 U.S. at 311-12. The Atkins court observed that after Penry, the federal government and numerous state legislatures had prohibited the execution of mentally retarded criminals. Id. at 314-15. That a large number of states had prohibited the execution of mentally retarded persons, the Atkins court found, "provides powerful evidence that today our society views mentally retarded offenders as categorically less culpable than the average criminal." Id. at 316. The Supreme Court concluded that the execution of mentally retarded criminals does

not "measurably advance the deterrent or the retributive purpose of the death penalty," and that mentally retarded criminals face a higher risk of receiving a disproportionately harsh penalty because the risk of false confessions is higher, and because they may be less able to give their counsel meaningful assistance.  Id. at 318-21.  "Construing and applying the Eighth Amendment in the light of [the] 'evolving standards of decency,'" the Supreme Court concluded that the execution of mentally retarded criminals is an excessive sanction that violates the Eighth Amendment.  Id. at 321.

In 1989, Supreme Court decided Stanford v. Kentucky, 492 U.S. 361 (1989). In Stanford, the Supreme Court considered whether the Eighth Amendment barred the execution of juvenile offenders over the age of fifteen but under the age of eighteen.  The Stanford court found that the majority of states that permit capital punishment authorize it for sixteen and seventeen-year-old offenders.  Stanford, 492 U.S. at 370.  Because a majority of the states permitted the execution of sixteen and seventeen-year-old offenders, the Stanford court could not conclude that a there was a national consensus sufficient to label the practice of executing juvenile offenders as "cruel and unusual."  Id. at 370-71.

In 2005, the Supreme Court, in Roper, revisited whether executing offenders who were under the age of eighteen when they committed their offense violates the

Eighth Amendment.  Christopher Simmons, the defendant in <u>Roper</u>, was seventeen years old when he committed the murder at issue in that case.  <u>Roper</u>, 543 U.S. at 556.  Nine months later, after he turned eighteen, Simmons was tried as an adult, convicted of murder, and sentenced to death.  <u>Id.</u>  Simmons unsuccessfully sought post-conviction relief in state and federal court to overturn his conviction and sentence.  <u>Id.</u> at 559.  Simmons filed a new petition for state post-conviction relief after <u>Atkins</u> was decided.  <u>Id.</u>  He argued that the reasoning in <u>Atkins</u> also applies to juveniles.  <u>Id.</u>  The Missouri Supreme Court agreed, and set aside Simmons' death sentence.  <u>Id.</u> at 559-60.  The state appealed.

In the appeal, the Supreme Court found thirty states then prohibited the execution of juvenile offenders.  <u>Id.</u> at 564.  Twelve of these did not have the death penalty and the eighteen that did prohibited execution of juveniles.  <u>Id.</u>  The Supreme Court found further that after 1989, the year <u>Stanford</u> was decided, five states that allowed the juvenile death penalty had abandoned it.  <u>Id.</u> at 565.  In the twenty states that allow juvenile executions, the practice was infrequent, with only six states executing prisoners for crimes committed as juveniles after <u>Stanford</u>.  <u>Id.</u> at 564.  The Supreme Court concluded that the Eighth Amendment barred the execution of defendants who were juveniles when they committed the offense for

which the death penalty was imposed.  The Supreme Court stated:

> the rejection of the juvenile death penalty in the majority of States; the infrequency of its use even where it remains on the books; and the consistency in the trend toward abolition of the practice—provide sufficient evidence that today our society views juveniles, in the words Atkins used respecting the mentally retarded, as "categorically less culpable than the average criminal."

Roper, 543 U.S. at 567 (quoting Atkins, 536 U.S. at 316).

Petitioner was not a juvenile when he committed the kidnapping with bodily injury that resulted in his death sentence, and Petitioner does not argue that he is "mentally retarded" or that Atkins directly applies.  Petitioner instead argues that his disabilities and mental illnesses when he, as an adult, committed the offenses for which he was convicted, render him the functional and legal equivalent of an "offender whose culpability is limited by mental retardation or youth, and as such his execution would violate" the Eighth Amendment.  (Am. Pet. at 118).  To show prejudice, Petitioner offers only that "there is a reasonable likelihood that [Petitioner] would succeed on the merits of his claim . . . ."  (Resp. at 30).

Petitioner does not provide any support, such as an emerging consensus among the states regarding withholding the death penalty for adults who are the "equivalent" of a mentally retarded person or a juvenile, to show it would violate the Eighth Amendment to execute a defendant who is the "equivalent" of a mentally retarded person or a juvenile.  Petitioner's argument essentially asks the

Court to extend Atkins and Roper to apply to him.  The Eleventh Circuit, in

Carroll v. Sec'y for Dep't of Corr., 574 F.3d 1354 (11th Cir. 2009), addressed this

issue, finding that the extension of Atkins, as argued by Petitioner here, "would

constitute a new rule of constitutional law."  See Carroll, 574 F.3d 1354 (citing

Spaziano v. Singletary, 36 F.3d 1028, 1042 (11th Cir. 1994) ("Even if the result the

habeas petitioner seeks is within the logical compass of a prior Supreme Court

decision; even if prior Supreme Court decisions inform, or even control or govern,

the analysis of the claim; it is still a new rule claim unless the rule is actually

dictated by pre-existing precedent.") (internal citations omitted)).

　　　　The Court, in the absence of authority to support Petitioner's requested

extension of Atkins and Roper, and in the absence of any evidence that there is an

emerging consensus among the states that executions of adults who are the

functional equivalent of mentally retarded persons or juvenile offenders should be

prohibited, does not conclude that any constitutional violation occurred here.  See

Mize, 532 F.3d at 1190.  Petitioner cannot show that he suffered prejudice to

excuse procedural default of this claim, and this claim is dismissed.  See Bailey,

172 F.3d at 1306.

### 2.   Claims Found by the State Habeas Court to be Abandoned

Respondent argues the state habeas court found that Petitioner abandoned

certain of his ineffective assistance of counsel claims (the "Abandoned Claims"),

including that his counsel was ineffective when he:

(1) labored under an undisclosed, unwaived conflict of interest,

(2) failed to investigate adequately the case facts, the crime and bad acts, bad character and bad reputation evidence introduced by the prosecution, and uncharged offenses presented by the prosecution;

(3) failed to seek and conduct adequate testing of evidence the prosecution relied upon at trial, and failed to seek funds for numerous potential expert defense witnesses, including an independent crime scene expert and independent pathologist to challenge the State's findings;

(4) failed to develop mental health evidence of Petitioner, whose capacity was diminished at the time of the offense and who was incompetent to stand trial;

(5) conducted inadequate *voir dire*;

(6) failed to assert, argue and preserve challenges to the prosecution's conduct during voir dire, including its improper, erroneous factual assertions, legal assertions, or arguments before the venire generally or individually, its taint of venire members by misconduct engaged in their presence, and its unlawful and unconstitutional exercise of peremptory challenges;

(7) failed to object properly and preserve issues during *voir dire*, including the trial judge's restrictive manner of conducting *voir dire*, the trial court's refusal to allow questioning of certain members of the venire and to allow certain questions of some and all members of the venire, the prosecution's unlawful use of peremptory challenges in violation of Batson v. Kentucky, 476 U.S. 79 (1986), the trial court's

dismissal of venire members without adequate legal justification, and the trial court's unlawful reliance upon *in camera*, *ex parte* proceedings to conduct portions of *voir dire*;

(8) failed to object to testimony throughout pretrial, trial, and post-trial proceedings;

(9) failed to object to the prosecution's questions regarding Petitioner's reputation for truthfulness and veracity though Petitioner did not testify at trial;

(10) failed to object to, argue, and preserve legal issues throughout the proceedings;

(11) failed to cross-examine and impeach properly and effectively the State's witnesses, particularly co-defendant Phillip Williams;

(12) failed to provide Petitioner advice, or adequate advice and counsel, regarding a possible plea;

(13) failed to raise and preserve meritorious issues for appeal and for litigation in post-conviction proceedings, including the impact of Sabel v. State, 248 Ga. 10, 282 S.E.2d 61 (Ga. 1981);

(14) failed to object to erroneous, unlawful, and burden-shifting jury instructions;

(15) failed to research and understand relevant law and legal principles governing pretrial, trial, and post-trial proceedings;

(16) failed to preserve objections to evidence, arguments, instructions, court rulings, and prejudicial occurrences throughout pretrial, trial, and post-trial proceedings;

(17) failed to make proper opening and closing statements, failed to respond to prejudicial, unlawful arguments by the prosecution, failed to address material factual and legal misstatements relied upon by the prosecution, and failed to raise affirmatively helpful facts or arguments;

(18) failed to raise various issues and claims at motion for new trial and on direct appeal;

(19) failed to investigate facts and issues counsel were, or should have been, on notice for presentation at motion for new trial, which failure may have waived Petitioner's right to present and litigate those issues on appeal or in habeas proceedings;

(20) failed to argue appropriate state and federal law, constitutional, statutory, or otherwise, in support of the issues counsel asserted and raised in pretrial, trial, and post-trial proceedings; and

(21) failed to preserve facts, claims, or issues Petitioner asserted here, or at some point in the future, which a court may deem waived by virtue of counsel's failure to preserve such facts, claims or issues.

(See Br. at 20-23).  The state habeas court determined that, because he did not brief them, Petitioner abandoned these claims and they were denied for that reason.  (State Habeas Court Order at 30).[15]

    Respondent argues the Court should consider the Abandoned Claims as procedurally defaulted under state law, and thus denied in this federal habeas action.  (Br. at 22-23).  Petitioner argues that the state court's dismissal of these

---

[15]    The state habeas court addressed, on the merits, Petitioner's ineffective assistance of counsel claims based on the "chilling effect" of Sabel v. State, 282 S.E. 2d 61 (Ga. 1994), as well as several of Petitioner's ineffective assistance of counsel claims based on his trial counsel's ineffectiveness at the sentencing phase of the trial.  (State Habeas Court Order at 26-30).  After addressing these claims on the merits, the state habeas court concluded that Petitioner had failed to brief his remaining ineffective assistance of counsel claims—which includes the Abandoned Claims asserted in this federal habeas proceeding—and these claims were denied for this reason.

claims does not constitute procedural default based on an enforceable state procedural bar.

There is no authority to support Respondent's argument that a finding of abandonment of a claim raised in a state habeas petition constitutes a state finding of procedural default for purposes of a federal habeas petition. The state habeas court did not find that Petitioner had procedurally defaulted on these claims. It concluded only that the claims had been abandoned because Petitioner failed to brief them.[16]

The claims were deemed abandoned by the state habeas court even though Petitioner complied with the state law requirements for asserting claims in his state habeas action. O.C.G.A. § 9-14-44 requires only that a state habeas petition "clearly set forth the respects in which the petitioner's rights were violated." O.C.G.A. § 9-14-44. Section 9-14-44 provides that "[a]rgument and citations of authorities shall be omitted from the petition," stating further that "a brief may be submitted in support of the petition setting forth any applicable argument." Id. (emphasis added). In Presnell v. Hall, No. 1:07-cv-1267-CC, 2013 WL 1213132

---

[16] The state habeas court discusses the Abandoned Claims in a section of the order separate from the section in which it discussed the claims it found were procedurally defaulted. (Compare State Habeas Court Order at 17-23 with id. at 30). This separation of discussions illustrates that the state habeas court itself did not consider abandonment the same as a procedural default.

(N.D. Ga. Mar. 25, 2013), our Court observed it was "not aware of any firmly established and regularly followed [Georgia] procedural rule dictating that a claim not argued in briefing is abandoned." Presnell, 2013 WL 1213132, at *12.

Petitioner here was permitted, but not required, under O.C.G.A. § 9-14-44 to brief the habeas claims he asserted, and the Court concludes that his decision not to brief these specific claims was not a procedural default of them. In Georgia, there is no state law requirement that each claim be briefed and there is no state rule that failure to brief a claim asserted in a state habeas petition constitutes a procedural default of that claim.[17] The Court concludes that the state habeas court did not apply a "procedural default principle of state law to arrive at the conclusion that [Petitioner's] federal claims are barred." See Bailey, 172 F.3d at 1302.[18]

---

[17] Other states specifically require that a claim be asserted in a petition and briefed. See, e.g., Farmer v. McNeil, No. 5:08CV292/RS/MD, 2010 WL 1957502 (N.D. Fla. Apr. 6, 2010); Burks v. State, 600 So.2d 374, 380 (Ala. Crim. App.), opinion extended after remand, 600 So.2d 387 (Ala. Crim. App. 1991) (issue not argued in brief are abandoned). In these states, failure to brief an asserted claim can result in the claim not being considered on federal habeas review based on a failure to exhaust the claim, not because the claim was procedurally defaulted. See Atwater v. Crosby, 451 F.3d 799, 810 (11th Cir. 2006).

[18] Petitioner also denies that the state habeas court's decision was "adequate," the third prong of the "independent and adequate" test, and argues that he briefed a portion of the "abandoned" claims, and that these claims were improperly considered abandoned by the state habeas court. (Resp. at 9-14). Having concluded that the state habeas court did not clearly and expressly rely on a state procedural default rule, the Court does not decide whether the state habeas court's

Even if the Court considered the state habeas court's "abandonment" decision to be a finding that the claims were "procedurally defaulted" under state law, this finding would not qualify as grounds to conclude the Abandoned Claims were procedurally defaulted for federal habeas review purposes. "[A] state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." Judd, 250 F.3d at 1313. To constitute an independent and adequate state rule of decision, a court must find that the last state court rendering a judgment in the case clearly and expressly stated that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Id. (citing Card v. Dugger, 911 F.2d 1494, 1516-17 (11th Cir. 1990); Ward, 592 F.3d at 1156-57. Here, the state habeas court did not "clearly and expressly state" that it was relying on a procedural default rule when it denied Petitioner's Abandoned Claims. It merely concluded that the claims were abandoned and they were denied on that ground. (See State Habeas Court Order at 30). The state habeas court's finding of abandonment does not satisfy the first prong of the "independent and adequate state ground" test. See Judd, 250 F.3d at

---

ruling, if it had been a finding of state procedural default, was "adequate" to bar the Court from considering Petitioner's claims on the merits.

1313.  For this further reason, the Abandoned Claims are not deemed procedurally defaulted in this federal habeas action.[19]

### 3.    Exhaustion of Claims

Respondent argues that several of Petitioner's claims were not presented to the state court and, because they are unexhausted, they are procedurally defaulted. Respondent argues that Petitioner failed to exhaust the following claims:

Claim I - ineffective assistance of counsel stemming from counsel's alleged failure to:

(a) properly investigate Phillip Williams'—Petitioner's co-defendant—background and reputation to identify impeachment evidence;

(b) to pursue plea negotiations; and

(c) investigate, rebut, and object to evidence of Petitioner's bad behavior in the Cobb County Adult Detention Center;

Claim V - prosecutorial misconduct because the prosecutor:

(a) vouched for Williams' credibility during his guilt-innocence phase closing argument;

---

[19]    Respondent does not argue that the Abandoned Claims are unexhausted. Petitioner did not brief the Abandoned Claims and his State Habeas Petition contains scant factual support for them.  Merely listing a series of unsupported claims without providing the state court with a meaningful opportunity to apply facts to the law may not satisfy the exhaustion requirement.  See Hunt, 666 F.3d at 730; Kelley, 377 F.3d at 1344-45.  Respondent's decision not to argue exhaustion at this stage does not constitute a waiver of this affirmative defense.  See 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").

(b) argued the worth and value of the victim during his sentencing phase closing argument; and

(c) violated <u>Giglio v. United States</u> when the prosecutor presented false testimony;

Claim VII - trial court error because the trial court failed:

(a) during the guilt-innocence phase to instruct that bodily injury must occur in the venue where the original kidnapping occurred; and

(b) at the sentencing phase to define the elements of armed robbery; and

Claim XI - violation of Petitioner's Eighth Amendment rights when the Georgia Supreme Court failed to conduct a meaningful proportionality review.

(Br. at 15-19).

> a) <u>Claim I - Ineffective Assistance of Counsel Because Counsel Failed to Investigate Williams' Background and Reputation</u>

Williams was Petitioner's co-defendant.  Respondent claims that Petitioner failed to raise, in his State Habeas Petition, a claim of ineffective assistance of counsel based on trial counsel's alleged failure to properly investigate Williams' background and reputation to use to impeach Williams.  Petitioner claims he asserted in his State Habeas Petition that his trial counsel "failed to properly and/or effectively cross-examine and/or impeach each of the state's witnesses, particularly

the co-defendant [Williams] . . . ." (State Habeas Petition at 107).[20]  Petitioner also

claimed that his trial counsel failed to adequately "investigate and present evidence

on the theory of the defense" which he and his counsel agreed to employ at the

guilt-innocence and sentencing phases of trial.  (Id. at 108).[21]  Petitioner argues that

this claim was also asserted and exhausted in his state court habeas proceeding and

that it subsumed counsel's claimed failure to properly investigate Williams'

background and reputation.  (Resp. at 33-34).

The law does not require that a state habeas claim be repeated verbatim as a

federal habeas claim to avoid procedural default.  See Spiegel v. Sandstrom,

---

[20]     Williams had been convicted of battery for a premeditated assault he committed at the Cobb County Adult Detention Center.

[21]     Petitioner, in his state habeas Post-Hearing Brief, specifically claimed that his trial counsel was ineffective for failing to secure Williams' prison or conviction records.  (Post-Hearing Brief at 53).  Petitioner also claimed that trial counsel's lack of due diligence to secure Williams' records for impeachment purposes constituted ineffective assistance of counsel.  (Id. at 96 n.31).  This claim provides more context to Petitioner's claim in his State Habeas Petition regarding his counsel's failure to properly cross-examine and impeach witnesses and to investigate and present evidence.  Because Petitioner was required to raise his claims in his State Habeas Petition, the Court considers only whether the claim described in his State Habeas Petition is the "substantial equivalent" of the claim asserted in this federal habeas action, and does not consider how the claim was presented to the state habeas court in Petitioner's Post-Hearing Brief.  See Murrell, 674 S.E.2d at 892 n.2; O.C.G.A. §§ 9-14-44, 9-14-51.

637 F.2d 405, 407 (5th Cir. Unit B Feb. 1981).[22]  What is required is "that the

substantial equivalent of a petitioner's federal habeas claim [was] argued in the

state proceedings."  Id.  The question here is whether Petitioner's generalized

"failure to properly cross-examine and impeach [Williams]" and "failure to

investigate and present evidence" claims in his State Habeas Petition were specific

enough to include the "failure to obtain information about Williams' background"

claim Petitioner asserts in the Amended Petition.

Comparing Petitioner's state habeas claim with the federal habeas claim of

ineffective assistance of counsel based on the claimed failure to investigate

Williams' background and reputation for use to impeach Williams at trial, the

Court finds the state and federal claims are substantially the same, even if the

federal claim is more targeted.  Williams was the prosecutor's primary witness

against Petitioner.  (Am. Pet. at 86).  Petitioner asserts that trial counsel's defense

strategy was to attack Williams' credibility and suggest that he was more culpable

than he admitted in his testimony.  (Resp. at 33-34).  Petitioner's claims in his

State Habeas Petition that trial counsel was ineffective in (i) failing to adequately

"investigate and present evidence on the theory of the defense" and (ii) failing to

---

[22]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the
Eleventh Circuit adopted as binding the decisions of the Fifth Circuit made before
October 1, 1981.

properly cross-examine and impeach Williams, when read together, evince the substantial equivalent of the claim before the Court that his trial counsel was ineffective for failing to properly investigate Williams' background and reputation to use in cross-examining and impeaching Williams.  See Spiegel, 637 F.2d at 407. The state habeas court was able to apply controlling legal principles to Petitioner's claim that his counsel was ineffective for failing to investigate evidence on his defense and failing to properly cross-examine and impeach Williams.  See Kelley, 377 F.3d at 1344.  The Court finds that the substantial equivalent of Petitioner's state habeas claim is asserted by Petitioner in his federal habeas action, and thus Petitioner's ineffective assistance of counsel claim based on the investigation of Williams' background and reputation is not procedurally defaulted.  See Spiegel, 637 F.2d at 407; see also Hunt, 666 F.3d at 730.

> b)    Claim I - Ineffective Assistance of Counsel Because Counsel Failed to Pursue Plea Negotiations

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."  Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). As a result, "[d]uring plea negotiations defendants are entitled to the effective assistance of competent counsel."  Id.  (internal quotations omitted).  Petitioner, in his State Habeas Petition, asserted that "[t]rial counsel was ineffective for failing to provide the defendant with any advice, or at the very least adequate advice and

counsel, regarding his decisions concerning a possible plea in the case . . . ." (State Habeas Petition at 108).  In his Amended Petition in this case, Petitioner claims that his trial counsel failed to provide him counsel "regarding his decisions concerning a possible plea in the case, and . . . in failing to pursue plea negotiations with the State."  (Am. Pet. at 57).

Comparing these two claims, the only difference between them is that, in his State Habeas Petition, Petitioner did not allege a claim for ineffective assistance of counsel based on trial counsel's "fail[ure] to pursue plea negotiations with the State."  (See State Habeas Petition at 108).  Petitioner argues that while the claims in his state and federal habeas petitions are not stated identically, the state habeas claim was sufficient to assert Petitioner's claim of ineffective assistance of his trial counsel regarding plea negotiations and offers generally.  The Court agrees.  The claim alleged in the state and federal habeas actions is that Petitioner's trial representation was inadequate and ineffective regarding decisions about a plea or the negotiations on plea agreement terms if a particular term was not acceptable. Petitioner was not required to assert verbatim here the claim he asserted in his state habeas proceeding.  See Spiegel, 637 F.2d at 407.  Petitioner was only required to show that the "substantial equivalent" of his federal habeas claim was presented to the state habeas court.  Id.  The Court concludes Petitioner asserts in this federal

habeas action the substantial equivalent of the claim he asserted in his State Habeas Petition, and this claim is not procedurally defaulted.

        c)    <u>Claim I - Ineffective Assistance of Counsel Because Counsel Failed to Investigate, Rebut, and Object to Evidence of Petitioner's Bad Behavior in the Cobb County Adult Detention Center</u>

Petitioner argues that he adequately raised in his state court habeas proceeding that his counsel was ineffective for failing to investigate, rebut and "object properly to evidence concerning Petitioner's alleged bad behavior in the Cobb County Adult Detention Center."  (Resp. at 34; <u>see also</u> Am. Pet. at 58). Petitioner alleged in his State Habeas Petition that his trial counsel "failed to investigate and/or rebut and/or object properly to evidence concerning Petitioner's alleged involvement in other crimes, adjudicated and/or unadjudicated," and "failed to present critical evidence at trial."  (Resp. at 34).

Petitioner's general allegations in his State Habeas Petition that his trial counsel failed to investigate, rebut, or object "to evidence concerning Petitioner's alleged involvement in other crimes" did not present his "bad behavior at Cobb County Adult Detention Center" claim to the state habeas court "such that the reasonable reader would understand [the] claim's particular legal basis and specific factual foundation . . . ."  <u>See Hunt</u>, 666 F.3d 730-31; <u>see also French</u> 790 F.3d at 1271 ("[A] petitioner cannot 'scatter some makeshift needles in the haystack of the

state court record.'").  "Although it is difficult to 'pinpoint the minimum

requirements that a habeas petitioner must meet in order to exhaust his remedies,'"

Petitioner's State Habeas Petition did not meet this threshold.  French 790 F.3d at

1271.  Petitioner did not "present the [state habeas court] with the specific acts or

omissions of his lawyers" that he argues were error, or that the evidence of "other

crimes" Petitioner may have committed includes his behavior issues at the Cobb

County Adult Detention Center.  See Kelley, 377 F.3d at 1344.  Only in his

Post-Remand Brief did Petitioner state that an expert would have explained that his

infractions at the Cobb County Adult Detention Center were the result of

Petitioner's cognitive and emotional impairments.  (See Post-Remand Brief at

46-48, Post-Remand Reply at 15-17).  This purported mitigation-type information

does not fall within the state habeas claim that focuses on evidence concerning

"alleged involvement in other crimes."[23]

---

[23]    Petitioner argued in his state habeas post-remand briefing that an "expert
would have explained to the jury that Petitioner's repeated infractions at the Cobb
County jail were an expected consequence of his inability to control his own
impulses and navigate complex interpersonal situations."  (See Post-Remand Brief
at 46-48; Post-Remand Reply at 15-17).  Petitioner also claims that he detailed in
his state habeas Post-Hearing Brief "how trial counsel's failures to conduct an
adequate investigation left them unable to meet the state's case in aggravation."
(Resp. at 34).  Although these allegations may provide context, Petitioner was
required to raise his Cobb County Adult Detention Center conduct as a basis for
"alleged involvement in other crimes" claim in his State Habeas Petition, not for

That Petitioner discussed, in his Post-Remand Brief, how his mental health issues may have contributed to his behavior in the Cobb County Adult Detention Center did not qualify or inform his general, unspecified "failure to investigate and rebut 'Petitioner's alleged involvement in other crimes'" claim asserted in his State Habeas Petition.  Understandably, the state habeas court did not consider the claim now asserted in Petitioner's Amended Petition.  The state habeas court's order shows that the state habeas court considered many of Petitioner's ineffective assistance of counsel arguments, but did not consider, or reference at all, his claim that his counsel was ineffective for failing to investigate, rebut, or object to any evidence regarding Petitioner's conduct at the Cobb County Adult Detention Center.  (See Order on Remand; see also State Habeas Court Order).

Petitioner did not fairly present in his State Habeas Petition the legal or factual basis for the "bad behavior at Cobb County Adult Detention Center" claim alleged in the Amended Petition.  As a result, Petitioner did not exhaust this claim and it is procedurally defaulted, and dismissed.  See Bailey, 172 F.3d at 1305 ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.").

the first time in subsequent briefing.  See Murrell, 674 S.E.2d at 892 n.2; O.C.G.A. §§ 9-14-44, 9-14-51.

       d)     <u>Claim V - Prosecutorial Misconduct Because Prosecutor<br>Vouched for Williams' Credibility During His<br>Guilt-Innocence Phase Closing Argument</u>

Petitioner relies on a single allegation in his State Habeas Petition to support that his federal habeas "vouching" claim was sufficiently raised.  Petitioner alleged, in his State Habeas Petition:  "During argument the prosecutor also argued facts not in evidence and improperly offered his own personal opinion about the evidence and the proper outcome."  (State Habeas Petition at 63, ¶ 14).  Petitioner did not present to the state habeas court a claim that the prosecutor improperly offered his own opinion on, and thus vouched for, Williams' credibility.

In his State Habeas Petition, Petitioner alleged an unspecific, broad claim based on the entirety of the prosecutor's closing argument.  He did not claim that the prosecutor, in his closing argument, inappropriately vouched for any witnesses' credibility.  A state habeas petitioner, "[t]o satisfy the exhaustion requirement[,]" is required to "present [his] claims to the state courts such that the reasonable reader would understand each claim's particular basis and specific factual foundation." <u>Hunt</u>, 666 F.3d at 730-31.  It is not "sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." <u>Kelley</u>, 377 F.3d at 1344.  The petitioner must have presented his claim to the state habeas court such that the state habeas court was "permitted the

opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim." Id. (internal quotations omitted). "[T]he grounds relied upon must be presented face-up and squarely." Hunt, 666 F.3d at 730-31. That was not done here and for that reason the State Habeas Petition does not sufficiently assert the "vouching" claim Petitioner seeks to assert in this federal habeas action. Petitioner has procedurally defaulted on this claim and it is dismissed. See O.C.G.A. § 9-14-51; Bailey, 172 F.3d at 1305.

e)   Claim V - Prosecutorial Misconduct Because Prosecutor Argued the Worth and Value of the Victim During His Sentencing Phase Closing Argument

The Amended Petition alleges that the prosecutor at trial "made a number of improper and prejudicial arguments, including . . . improperly arguing the worth and value of the victim." (Am. Pet. at 96-97). Petitioner contends the following claim in his State Habeas Petition sufficiently alleged the claim asserted here:

> Petitioner was denied his right to a fair trial, due process, equal protection, the effective assistance of counsel, and a fair and reliable capital sentencing proceeding, by the prosecutor's reliance upon substantial "victim impact" testimony.

(State Habeas Petition at 88). This language was offered to support Petitioner's claimed violation of his constitutional rights by the trial court's erroneously permitting "the prosecution to introduce substantial inflammatory and prejudicial so-called 'victim impact' testimony." (Id.).

The state habeas claim upon which Petitioner relies here was based on the admissibility of the evidence at trial.  In the Amended Petition before this Court, Petitioner does not argue that the "victim impact" evidence was inadmissible at trial, but rather that the prosecutor generally and improperly argued the worth and value of the victim.  Petitioner does not identify the specific statements made by the prosecutor during his argument or the evidence, if any, that the prosecutor cited in his argument.  The state and federal habeas claims are based on different grounds and are not the substantial equivalent of one another.  See Spiegel, 637 F.2d at 407.  Petitioner did not exhaust this claim, and it is procedurally defaulted and dismissed.  See Bailey, 172 F.3d at 1305.

> f)   Claim V - Prosecutorial Misconduct Because The Prosecutor Violated Giglio v. United States When the Prosecutor Presented False Testimony

In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court stated the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice."  Giglio, 405 U.S. at 153 (internal quotations omitted).  Respondent argues that Petitioner failed to exhaust his claim that the prosecutor violated Giglio when he presented false testimony from (i) Petitioner's arresting officers and Cobb County detectives regarding Petitioner's arrest, and (ii) corrections officers at the Cobb County

Detention Center regarding Petitioner's reputation for deception, and that he was the "worst" individual incarcerated at that center.  (Br. at 16-17).  Petitioner argues that his state habeas claims based on alleged <u>Giglio</u> violations were addressed by the state habeas court.  Petitioner states:

> Respondent . . . observes that the state habeas court ruled that . . . [Petitioner's <u>Giglio</u>- based] claim was res judicata . . . .  If the state habeas court <u>ruled</u> upon the claims, whether erroneous or not, then the claims were necessarily <u>presented</u> to the state court for review.  As Respondent correctly stated, the <u>Giglio</u> claims were explicitly identified and ruled on by the state habeas court in its 2008 Order.

(Resp. at 37).  Respondent argues that the state habeas court's decision that the claims were barred does not support that the claims were exhausted, because the state habeas court's holding was wrong.

### (1)    Agent McCravy's Testimony

Petitioner argued in his Appellate Brief submitted to the Georgia Supreme Court that Agent McCravy's testimony that he arrested Petitioner and Williams at the same time and brought them to the police station together, when combined with his testimony that he brought Williams from a juvenile detention center, gave the jury the false impression that Petitioner also was brought from the detention center. (Appellate Br. at 179).  Petitioner contends he was not brought to the police station with Williams in the same vehicle.  (<u>Id.</u> at 179-80).  Petitioner argued that, because Agent McCravy was not present at his arrest, his testimony was inadmissible, and

when it was admitted, it was highly prejudicial to Petitioner.  Petitioner argued that

his rights to due process, equal protection, a fair trial, and confrontation were

violated as a result.  (Id. at 181).

Petitioner, however, did not argue to the Georgia Supreme Court and did not

allege in his State Habeas Petition that the prosecutor deliberately deceived the

state court and jury, and he did not specifically allege that the prosecutor presented

known false evidence to the jury, in violation of Giglio.  (State Habeas Court Order

at 21); see also Sears, 493 S.E.2d at 186.  Neither the Georgia Supreme Court nor

the state habeas court were given the opportunity to address the Giglio-based claim

that Petitioner advances in this federal habeas action.

To exhaust a claim, it is not sufficient for a petitioner to simply present to

the state courts all the facts necessary to support a claim.  Kelley, 377 F.3d at

1343-44.  A petitioner must also present the claim "such that the reasonable reader

would understand each claim's particular legal basis . . . ."  Hunt, 666 F.3d at 730.

Even if Petitioner presented sufficient facts to support a Giglio claim, Petitioner

did not specifically assert a Giglio violation and the state courts thus were denied

the opportunity to consider whether the conduct alleged by Petitioner violated the

prosecution's obligation under Giglio.  Petitioner did not raise and did not exhaust

this claim, and it is procedurally defaulted and dismissed.  <u>See</u>

O.C.G.A. § 9-14-51; <u>Bailey</u>, 172 F.3d at 1305.

(2)    <u>Detective Bello's Testimony</u>

Detective Bello, who was involved in Petitioner's arrest, testified at trial that

Petitioner lacked remorse for his crimes and that she would not believe Petitioner's

sworn testimony.  (Appellate Br. at 184-85).  Petitioner argued on direct appeal

that the trial judge erred in allowing Detective Bello's testimony, because the

testimony consisted of a speculative opinion which lacked any probative value.

(<u>Id.</u> at 187).  Petitioner did not argue in his direct appeal or in his state habeas

proceeding that, in eliciting this testimony, the prosecutor deliberately deceived the

trial court and the jury, or knowingly presented false testimony.  Petitioner also did

not claim in the state proceedings that the presentation of Detective Bello's

testimony violated <u>Giglio</u>.  As a result, neither the Georgia Supreme Court nor the

state habeas court addressed whether the alleged conduct violated <u>Giglio</u>.

(State Habeas Court Order at 21); <u>Sears</u>, 514 S.E.2d at 435.  Petitioner did not

present to the Georgia Supreme Court or the state habeas court the specific legal

basis for his <u>Giglio</u>-based claim.  <u>See Hunt</u>, 666 F.3d at 730.  Petitioner did not

exhaust his claim based on this alleged violation of <u>Giglio</u>, and it is procedurally

defaulted and dismissed.  <u>See</u> O.C.G.A. § 9-14-51; <u>Bailey</u>, 172 F.3d at 1305.

(3)     Major Burns' Testimony

Finally, Petitioner argued to the Georgia Supreme Court that Major Jim Burns, a Cobb County Adult Detention Center corrections officer, testified that Petitioner was the "worst prisoner he had come across in his 17 years at the jail," that Petitioner was transferred nearly 40 times before trial because of his allegedly disruptive behavior, and that he would not believe Petitioner's sworn testimony. (Appellate Br. at 185).  Petitioner argued this testimony was impermissible character evidence and that it was error to admit it at trial.  (Id. at 186-88).  Like Agent McCravy's and Detective Bello's testimony, Petitioner did not argue in his direct appeal or his state habeas proceeding that Major Burns' testimony violated Giglio, and in the absence of a claim that the testimony violated Giglio's requirements, neither the Georgia Supreme Court or the state habeas court evaluated the testimony based on a claimed Giglio violation.  (State Habeas Court Order at 21); Sears v. State, 514 S.E.2d 426, 435 (Ga. 1999).  Petitioner did not present Giglio as a specific legal basis for this claim.  This claim was not exhausted, and it is procedurally defaulted and dismissed.  See O.C.G.A. § 9-14-51; Hunt, 666 F.3d at 730; Bailey, 172 F.3d at 1305.

g)   Claim VII - Trial Court Error When the Trial Court
     Failed During the Guilt-Innocence Phase to Instruct That
     Bodily Injury Must Occur in the Venue Where the
     Original Kidnapping Occurred

Petitioner argues that he sufficiently raised on direct appeal his claim that

the trial court failed at the guilt-innocence phase to "instruct the jury that bodily

injury must occur in the venue where the original kidnapping occurred."  (Resp. at

37) (citing Appellate Br. at 97).  Respondent agrees that this claim was sufficiently

presented to the Georgia Supreme Court and thus it was exhausted.  (Reply at 32).

This claim is not procedurally defaulted.

h)   Claim VII - Trial Court Error When the Trial Court
     Failed at the Sentencing Phase to Define the Elements of
     Armed Robbery

Petitioner concedes he failed to exhaust his claim that the trial court failed at

the sentencing phase to define the elements of armed robbery, and this claim is

procedurally defaulted and dismissed.  (See Resp. at 38).

i)   Claim XI - Georgia Supreme Court Failed to Conduct a
     Meaningful Proportionality Review

The Georgia Supreme Court must, for every death sentence imposed, ensure

the punishment is not "excessive or disproportionate to the penalty imposed in

similar cases, considering both the crime and the defendant."  O.C.G.A.

§ 17-10-35(c)(1), (3).  Petitioner argues that the Georgia Supreme Court

improperly upheld his death sentence when it relied on seven allegedly similar cases in which a death sentence was imposed.  Petitioner claims, however, that only three of these cases involved kidnapping with bodily injury, the same crime of which Petitioner was convicted, and, in each of them, the defendant, unlike Petitioner, was also found guilty of murder.  (Am. Pet. at 125-26).  Petitioner argues further that the Georgia Supreme Court failed to consider all of the kidnapping with bodily injury cases in which a defendant was not sentenced to death.  (Id. at 126).  This failure, Petitioner claims, resulted in a disproportionate sentence that violated the Eighth Amendment.  (Resp. at 41).  Petitioner asserts that the Georgia Supreme Court's failure to conduct a meaningful proportionality review violated Petitioner's Eighth Amendment rights.  (Am. Pet. at 124-27).  Because the Georgia Supreme Court failed to conduct a proper proportionality review, Petitioner claims, this Court is required to conduct it.  (Am. Pet. at 127).

Respondent argues that Petitioner did not raise his proportionality review claim in his state court proceedings, and failed to exhaust it.  (Br. at 19).[24]  The Court disagrees.  On direct appeal, Petitioner argued that his death sentence was disproportionate to the sentences imposed for other kidnapping with bodily injury

---

[24]      Petitioner argues also that his death sentence is excessive in view of his crime of conviction—kidnapping with bodily injury—and the sentence thus violates the Eighth Amendment.  (Am. Pet. at 111-17).  Respondent does not argue this claim is not properly before this Court.

convictions.  (Appellate Br. at 216-18).  A review of Petitioner's State Habeas

Petition shows that Petitioner sufficiently raised his proportionality review claim in

his state habeas proceeding.  (Compare State Habeas Petition at 27-29 with

Am. Pet. at 124-27).  This claim is not procedurally defaulted.  See Bailey,

172 F.3d at 1305.[25]

C.    Cognizable Federal Habeas Claims

Respondent argues that the following are not cognizable federal habeas

claims based on alleged violation of Petitioner's Either Amendment rights: (1) the

Georgia Supreme Court failed to conduct a meaningful proportionality review

(Claim XI); (2) the extraordinarily long delay in the imposition of Petitioner's

sentence (Claim XIII); and (3) Georgia's use of lethal injection as a means of

execution (Claim XV).

1.    Claim XI - Georgia Supreme Court Failed to Conduct a
      Meaningful Proportionality Review

Respondent argues that the Eleventh Circuit's decisions in Moore

v. Balcom, 716 F.2d 1511 (11th Cir. 1983) and Lindsey v. Smith, 820 F.2d 1137

(11th Cir. 1987) preclude the Court from conducting a proportionality review.  (Br.

at 32-33).  In Moore, the Eleventh Circuit found that "[a]s a federal court

---

[25]    The Court addresses in Section II(C)(1) Respondent's additional argument
that this is not a cognizable habeas claim.

reviewing a collateral attack on a state prosecution, we must give great deference to the Georgia Supreme Court's method of conducting its proportionality review," and held that "the district court erred in conducting its own proportionality review." Moore, 716 F.2d at 1517, 1518.[26]  In Lindsey, the Eleventh Circuit, relying on Moore, rejected the argument that the federal habeas court was required to conduct a *de novo* proportionality review, noting that the "Constitution does not require a proportionality review." Lindsey, 820 F.2d at 1154.

After Moore and Lindsey, the Eleventh Circuit, in United States v. Elkins, 885 F.2d 775 (11th Cir. 1989), observed that the Supreme Court has held that grossly disproportionate sentences can violate the Eighth Amendment, and that federal courts must conduct a proportionality review of sentences imposed.  Elkins, 885 F.2d at 788.

In 2002, the Supreme Court in Atkins found that the Eighth Amendment "prohibits '[e]xcessive' sanctions," and noted that "it is a precept of justice that

---

[26]     The Moore court determined that the Georgia Supreme Court's proportionality review provided an adequate sentencing fairness safeguard and that, while it may have "reached a different conclusion regarding the proportionality of the sentence had we conducted a case-by-case comparison, we cannot conclude that the Georgia Supreme Court's review or the result it reached shocked the conscience." Id. at 1519.  The Moore court also stated that, had it concluded that the Georgia Supreme Court's decision "shocked the conscience," it would have been required to remand the case to the state court to resentence the petitioner, rather than conduct its own *de novo* proportionality review.

punishment for crime should be graduated and proportioned to [the] offense."
Atkins, 536 U.S. at 311 (citation omitted).  The Supreme Court opined that a
proportionality review to ensure that a punishment is not excessive is warranted
under the Eighth Amendment.  Id.  A proportionality review under the "evolving
standards of decency" should be informed by "objective factors to the maximum
possible extent."  Id. at 311-12.

A review of Supreme Court and Eleventh Circuit authority supports that a
limited proportionality review under the Eighth Amendment to ensure that
Petitioner's sentence is not excessive is a cognizable claim for habeas relief.  See
Elkins, 885 F.2d at 788; Atkins, 536 U.S. at 311-12.  "This proportionality review
is extremely limited."  Elkins, 885 F.2d at 788.  The Court, when it conducts its
merits analysis of this claim, must "determine only whether the sentence imposed
is so grossly disproportionate to the crime as to constitute cruel and unusual
punishment."  Id. at 789.  "In conducting this proportionality review, this Court
must evaluate three elements: (1) the gravity of the offense and the harshness of
the penalty; (2) the sentences imposed on other criminals in the same jurisdiction;
and (3) the sentences imposed for commission of the same crime in other
jurisdictions."  Id.

Petitioner's claim that he received a disproportionately harsh sentence in violation of the Eighth Amendment is a cognizable federal habeas claim.

> 2. Claim XIII – Extraordinary Delay in Imposition of Sentence Violates Eighth Amendment

Petitioner argues that the extraordinary twenty-four (24) year delay in the execution of his sentence violates Petitioner's Eighth Amendment rights. (Am. Pet. at 127-37).  Petitioner claims the twenty-four year period constitutes an excessive punishment, in part, because of the more restrictive and punitive conditions of death row confinement, the "mental anguish of living under the shadow of death," and the lack of a deterrent effect Petitioner's execution would have after twenty-four years.  (Id. at 131-37).  Respondent argues that the state habeas court found this claim was not cognizable, and that the Court should reach the same conclusion.  (Br. at 33).[27]

In Thompson v. Sec'y for Dep't of Corr., 517 F.3d 1279 (11th Cir. 2008), the Eleventh Circuit denied a petitioner's federal habeas claim that his prolonged confinement on death row was unconstitutional.  The Thompson court found that the petitioner could "identify no case in which the Supreme Court has held that

---

[27]    The state habeas court held that Petitioner's claim that the long period and conditions of his confinement amounted to cruel and unusual punishment, was not cognizable because the confinement period was not the result of Petitioner's conviction and sentence.  (State Habeas Court Order at 24).

prolonged confinement on death row violates a prisoner's constitutional rights.

The only Supreme Court acts involving this issue are denials of petitions for writs

of certiorari." Thompson, 517 F.3d at 1283.  "[G]iven the total absence of

Supreme Court precedent that a prolonged stay on death row violates the Eighth

Amendment guarantee against cruel and unusual punishment, [the Eleventh

Circuit] conclude[d] that execution following a 31-year term of imprisonment is

not in itself a constitutional violation" Id. at 1284.

There is no authority to support Petitioner's claim that his prolonged death

row confinement violates his Eighth Amendment rights.  During his confinement

period, Petitioner "has benefitted from this careful and meticulous process [of

appeal and habeas proceedings] and cannot now complain that the expensive and

laborious process of habeas corpus appeals which exists to protect him has violated

other of his rights."  See White v. Johnson, 79 F.3d 432, 439 (5th Cir. 1996).

Petitioner "had the choice of seeking further review of his conviction and sentence

or avoiding further delay of his execution by not petitioning for further

review . . . ."  Id.

Petitioner asserts only a claim concerning the conditions of his confinement,

rather than his sentence of death, and, thus, his claim "fall[s] outside of habeas

corpus law."  See Vaz v. Skinner, No. 14-15791, 2015 WL 9309354, at *2

(11th Cir. Dec. 23, 2015); Smith v. Southwood, 226 F. App'x 882, 882 (11th Cir.

2007).  Petitioner's claim is not a cognizable federal habeas claim, and is

dismissed.

       3.     Claim XV – Georgia's Use of Lethal Injection as a Means of
Execution Violates Eighth Amendment

Petitioner argues that Georgia's protocols and procedures for executing a

prisoner by lethal injection violates the Eighth Amendment, including because the

procedures do not include adequate safeguards to ensure the efficacy of the drugs

that will be used to execute Petitioner.  .  (Am. Pet. at 139-147).

Respondent argues that this claim concerns the circumstances of Petitioner's

confinement, and is not a cognizable habeas claim.  (Br. at 33-34).  Petitioner

asserts the Supreme Court has held that "method-of-execution challenges . . . fall at

the margins of habeas."  (Resp. at 44) (citing Nelson v. Campbell, 541 U.S. 637,

646 (2004)).

The Eleventh Circuit, in a habeas case involving a challenge to Alabama's

lethal injection protocol, stated:

> Issues sounding in habeas are mutually exclusive from those sounding
> in a § 1983 action.  See Hutcherson v. Riley, 468 F.3d 750, 754 (11th
> Cir. 2006) ("An inmate convicted and sentenced under state law may
> seek federal relief under two primary avenues:" a petition for habeas
> corpus or a complaint under 42 U.S.C. § 1983.).  "The line of
> demarcation between a § 1983 civil rights action and a § 2254 habeas
> claim is based on the effect of the claim on the inmate's conviction

and/or sentence." Id.  A claim is properly raised under § 1983 when "an inmate challenges the circumstances of his confinement but not the validity of his conviction and/or sentence." Id. (internal quotation marks omitted).  By contrast, "habeas corpus law exists to provide a prisoner an avenue to attack the fact or duration of physical imprisonment and to obtain immediate or speedier release." Valle v. Sec'y, Fla. Dep't of Corr., 654 F.3d 1266, 1267 (11th Cir. 2011), cert. denied, —— U.S. ——, 132 S.Ct. 73, 180 L.Ed.2d 942 (2011).

Usually, an inmate who challenges a state's method of execution is attacking the means by which the State intends to execute him, which is a circumstance of his confinement.  It is not an attack on the validity of his conviction and/or sentence.  For that reason, "[a] § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures." Tompkins v. Sec'y, Dep't of Corr., 557 F.3d 1257, 1261 (11th Cir. 2009).  Hence, we conclude that the district court did not err in dismissing McNabb's lethal injection challenge in his federal habeas petition.  That avenue of relief is still available to him in a § 1983 action.

McNabb v. Comm'r Ala. Dep't of Corr., 727 F.3d 1334, 1344 (11th Cir. 2013);

see also Butts v. Chatman, No. 5:13-cv-194 MTT, 2014 WL 185339, at *4

(M.D. Ga. Jan. 15, 2014) (constitutional challenge to Georgia's lethal injection

protocol must be brought in a Section 1983 action); Whatley v. Upton,

No. 3:09-cv-0074-WSD, 2013 WL 1431649, at *52 (N.D. Ga. Apr. 9, 2013)

("Petitioner's challenge to Georgia's method of execution is not cognizable in a

habeas proceeding and is appropriately brought in a Section 1983 action.").

Petitioner's method-of-execution claim is an attack on the "circumstance of his confinement" and not on the "validity of his conviction [or] sentence."  It is not a cognizable federal habeas claim, and is dismissed.  See, e.g., McNabb, 727 F.3d at 1344 ("A § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures.").[28]

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Petitioner Demarcus Ali Sears has procedurally defaulted on his claims for: (1) ineffective assistance of counsel for failing to investigate, rebut, and object to evidence of Petitioner's bad behavior in the Cobb County Adult Detention Center; (2) prosecutorial misconduct for the prosecutor vouching for Williams' credibility during his guilt-innocence phase closing argument; (3) prosecutorial misconduct for arguing the worth and value of the victim during his sentencing phase closing argument; (4) prosecutorial misconduct for the violation of Giglio v. United States, 405 U.S. 150 (1972) in presenting allegedly false testimony from Agent McCravy, Detective Bello, and Major Burns, and the testimony of Phillip Williams regarding the crime's circumstances; (5) prosecutorial misconduct for the prosecutor arguing during the

---

[28]   Because Petitioner's lethal execution claim is not properly before this Court, the Court does not consider whether this claim has merit.

sentencing phase closing argument that the jurors should punish Petitioner for rape;
(6) prosecutorial misconduct for the prosecutor injecting his own view of the
evidence in his guilt-innocence and sentencing phase closing arguments, except as
to his claim that the prosecutor injected his own viewpoint about the purpose of
brass knuckles; (7) trial court error in death-qualifying the jury and disqualifying,
under <u>Witherspoon v. Illinois</u>, 391 U.S. 510, 522 (1968), five jurors for their views
on the death penalty; and (8) relief based on his cognitive and emotional
impairments rendering him the legal equivalent of a juvenile or intellectually
disabled offender.  These claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that Petitioner Demarcus Ali Sears' claims
for: (1) trial court error in failing at the sentencing phase to define the elements of
armed robbery, and (2) prosecutorial misconduct for the prosecutor denigrating in
his sentencing phase closing argument the jurors' right to exercise mercy, are
**DISMISSED**.

**IT IS FURTHER ORDERED** that Petitioner Demarcus Ali Sears' claims
that: (1) the extraordinary post-offense delay in imposition of his sentence violates
the Eighth Amendment, and (2) Georgia's use of lethal injection as a means of
execution violates the Eighth Amendment, are not cognizable claims for federal
habeas relief and are **DISMISSED**.

**IT IS FURTHER ORDERED** that Petitioner is entitled to proceed on his remaining claims.

**IT IS FURTHER ORDERED** that, pursuant to the Court's June 24, 2014, Scheduling Order, Petitioner shall have thirty (30) days from the date of this Order in which to file any request for discovery and any motion for an evidentiary hearing. Respondent shall have thirty (30) days from the filing of Petitioner's Motion(s) in which to file a response. Petitioner shall have fifteen (15) days from the filing of Respondent's Response to his Motions in which to reply. If discovery is permitted but an evidentiary hearing is not held, Petitioner shall have ninety (90) days from the date of the conclusion of discovery in which to file his final brief on the merits of all claims before the Court. If an evidentiary hearing is held, Petitioner shall have ninety (90) from the date that the transcript is filed in which to file his final brief on the merits of his claims. If Petitioner's requests for both discovery and an evidentiary hearing are denied, then Petitioner shall have ninety (90) days from the date of the Court's Order denying his Motions in which to file his final brief on the merits. In all cases, Respondent shall have sixty (60) days from the filing of Petitioner's brief in which to file his final brief in response, and Petitioner shall have forty-five (45) days thereafter in which to reply.

**SO ORDERED** this 8th day of April, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE